***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with The Phoenix Fund/National Benefits Group as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The date of the alleged injury is April 10, 2002.
5. Plaintiff's average weekly wage was $303.81, which yields a compensation rate of $202.55 per week.
6. The issues for determination are:
 a. Whether plaintiff sustained a compensable injury by accident to his hip arising out of and in the course and scope of his employment on April 10, 2002, and if so, to what benefits may he be entitled under the Act?
 b. Whether plaintiff constructively refused gainful employment, causing a termination of his employment with his employer in May of 2002?
 c. Is plaintiff's medical treatment causally related to an injury by accident at work?
 d. Did plaintiff provide proper notice of his alleged injury by accident to his employer?
7. The parties stipulated the following documentary evidence:
a. Exhibit 1 — Medical records, twenty-nine pages;
b. Exhibit 2 — Workplace photograph,
 c. Exhibit 3 — Defendant's Discovery Responses, ninety-three pages; and
 d. Exhibit 4 — Plaintiff's Discovery Responses, thirty-four pages.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-one years old and had completed the ninth grade. He had prior experience as a truck driver, farm worker and a construction worker. He began working for defendant-employer as a maintenance man in July of 2001, where his duties included working on the boiler, painting, lawn care, repairing wheelchairs, beds, kitchen equipment and water heaters.
2. At approximately age seven, plaintiff was run over by an automobile, sustaining severe injuries to his hip, back, and two fractured legs. Another automobile hit him at age fourteen, for which he required a full body cast for one year. Plaintiff stated that since age 21, his right hip pops out at least twice a month and that he twists and pops it back in place.
3. On April 10, 2002, plaintiff was assisting his supervisor, Fred Wilson, in repairing a water heater. Plaintiff was sitting on the floor with his legs crossed Indian-style and holding a spring-action door open when Mr. Wilson requested that plaintiff hand him a wrench. Plaintiff turned and twisted to his left and stretched to reach the wrench, which was 5-6 feet away. Plaintiff felt immediate pain. At the hearing before the Deputy Commissioner, plaintiff testified that at first he thought he had popped his hip out of place but that the pain he felt was severe in his lower right buttock and hip. Plaintiff further testified that this pain was different from his usual hip pain when his hip pops out because this time it burned, tingled and ran down his right leg.
4. Plaintiff also testified at the hearing before the Deputy Commissioner that after Mr. Wilson completed the repairs, he felt the burning sensation for the rest of the day.
5. On April 11, 2002, plaintiff reported to work in severe pain and eventually had to leave work.
6. Plaintiff sought treatment at the emergency department of Caldwell Memorial Hospital in the afternoon of April 11, 2002 where he reported leg numbness after his right hip popped out of place on April 10, 2002. He related a history of an old fractured hip and leg injury after a motor vehicle accident in childhood and degenerative changes since that time. He further reported his hip would dislocate with minimal activity a couple of times each month, and he is usually able to put it back in himself and normally the hip is sore afterwards but this time it was more painful and he had numbness going down the medial portion of his leg. An x-ray was ordered, which revealed an old avulsion deformity of the inferior-anterior left iliac spine. No right pelvic or hip abnormality was detected. Dr. Wendy Stout examined plaintiff, prior medical records and the diagnostic study, and diagnosed him with a right hip sprain from overexertion. He was instructed to follow-up with an orthopedist in five to seven days. Dr. Stout authorized plaintiff to remain out of work for four days and released him to restricted duty on crutches as of April 16, 2002.
7. On April 15, 2002, plaintiff sought treatment at Carolina Orthopaedic Specialists, where Dr. John T. McCormick examined him. At this appointment, plaintiff reported a history of progressive right sciatica beginning on April 10, 2002 after working on a water heater at work. He noted plaintiff stated he was sitting for 20 minutes; legs crossed underneath him "Indian-style" and bent over to work on this water heater, when he began experiencing pain. Dr. McCormick previously treated plaintiff for surgery on his left calcaneus. Dr. McCormick diagnosed plaintiff with right sciatica, probably a herniated disc at L5-S1 on the right. He authorized plaintiff to remain out of work until April 18, 2002.
8. Plaintiff worked intermittently and in a light duty capacity between April 10, 2002 and May 9, 2002. However, the plaintiff testified at the hearing before the Deputy Commissioner that Mr. Wilson terminated plaintiff's employment with the defendant on May 9, 2002 after the plaintiff missed work on May 6,7,8, and 9, 2002, resulting in him having 3 No-Call/No-Shows, notwithstanding the fact that on May 9, 2002, Dr. McCormick retroactively excused the plaintiff from work from April 10, 2002 to July 1, 2002 and notwithstanding the fact that plaintiff testified that he presented Dr. McCormick's note to Mr. Wilson on May 9, 2002, a fact which Mr. Wilson acknowledged at the hearing before the Deputy Commissioner as he testified that the note did indeed exist in the file at work on May 9, 2002 and he knew this on May 9, 2002 even as the plaintiff turned in his uniform, his pager and his keys.
9. On September 25, 2002, Dr. Richard Shelsky of Pain Relief Centers examined plaintiff for low back pain. At that time, plaintiff reported a history of sitting on the floor repairing a hot water heater at work when he twisted to reach for a wrench and developed a severe low back pain that radiated into his right lower extremity. He reported having low back pain for many years. Dr. Shelsky performed a lumbar epidural corticosteroid injection at L5-S1 on September 27, 2002. Plaintiff reported an exacerbation of his back pain after the injection.
10. On October 8, 2002, plaintiff returned to Dr. McCormick, at which time he reported the epidural steroids did not provide relief. He reported right sciatica, which radiates all the way down to his right great toe from mid back. However, on exam, straight leg raising was equivocal and there was no definite true sciatica elicited. Dr. McCormick then referred plaintiff to Dr. Alfred Geissele.
11. The plaintiff presented to Dr. Geissele on November 7, 2002. Plaintiff's chief complaint was constant mechanical back pain in the low lumbosacral area with secondary right hip and posterior thigh pain. Dr. Geissele diagnosed plaintiff with degenerative lumbar disc disease, lumbar radiculitis, right lower extremity, and degenerative changes at L5-S1.
12. On November 12, 2002, the plaintiff presented to Nurse Practitioner Carolyn Kass to follow-up for pain management. Transforaminal epidural injection and Panlor were recommended for pain and to restore sleep. Dr. Hans Hansen performed the epidural injection the following day.
13. For plaintiff's convenience, plaintiff's treatment was transferred to Dr. Ralph Maxy, an orthopedic surgeon, as his office was closer to plaintiff's home.
14. The plaintiff presented to Dr. Maxy on June 5, 2003. Dr. Maxy diagnosed plaintiff with degenerative disc disease and decreased intervertebral height at L5-S1 and mild degenerative disc disease at L4-5. After reviewing a diskogram, Dr. Maxy found negative concordant pain at L3-4 and L4-5 and positive concordant pain at L5-S1. Dr. Maxy plans to treat plaintiff through a surgical fusion at L5-S1.
15. Dr. McCormick opined to a reasonable degree of medical certainty that plaintiff's episode at work on April 10, 2002 in which he put himself in a sitting position at work predisposed him to a herniated disk. Dr. McCormick recommended surgical intervention and referred plaintiff to Dr. Geisselle. Dr. McCormick testified that he intended for plaintiff to remain out of work until Dr. Geissele took over plaintiff's care.
16. Dr. Geissele opined that given that plaintiff was sitting Indian-style and twisted and stretched to retrieve a wrench for his supervisor, that the plaintiff did not sustain trauma to his ball and socket joint and if it was truly a hip dislocation it would have been significant and plaintiff would not be able to just pop his hip back into place and continue about his normal activities.
17. Dr. Maxy opined that the plaintiff injured his back on April 11, 2002 when he was at work and sitting Indian-style and twisted to pick up an object for his supervisor. Dr. Maxy further opined that due to plaintiff's level of pain and resulting dependence upon narcotic medication, plaintiff has been and is currently unable to return to work as a result of his April 11, 2002 work related injury.
18. The Full Commission finds the plaintiff to be credible based on the totality of the evidence.
19. The competent evidence in the record establishes that plaintiff's back condition was caused by his work related injury on April 10, 2002 and that he has been disabled since April 10, 2002 and continues to be disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident to his back arising out of and in the course and scope of his employment and as a direct result of a specific traumatic incident of the work assigned on April 10, 2002. N.C. Gen. Stat. § 97-2(6) 1.
2. As a result of the plaintiff's compensable injury, he is entitled to receive temporary total disability compensation at the rate of $202.55 per week for the period beginning April 10, 2002 and continuing until further order of the Commission. Compensation due that has accrued shall be paid in a lump sum. The defendants shall receive a credit for any days worked by plaintiff during the period between April 10, 2002 and May 9, 2002. N.C. Gen. Stat. § 97-29.
3. The plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of his injuries by accident of April 10, 2002 for so long as such examinations, evaluations and treatments may reasonably be requested to effect a cure, or give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§97-25; 97-2(19).
 **********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendants shall pay to plaintiff, temporary total disability compensation at the rate of $202.55 per week from April 10, 2002 and continuing until further Order of the Commission. Compensation due which has accrued shall be paid in a lump sum. The defendants shall receive a credit for any days worked by plaintiff during the period between April 10, 2002 and May 9, 2002.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on April 10, 2002, for so long as such examinations, evaluations and treatment may be reasonably necessary to affect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those amounts and payable directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be payable directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of December 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
PTY:db